UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES F. LAGONA,

                  Petitioner,

v.

UNITED STATES OF AMERICA,

                  Respondent.

**DECISION AND ORDER**
16-CV-428S
12-CR-375S

## I. INTRODUCTION

Defendant James F. Lagona stands convicted in two separate cases in this district. First, on February 23, 2011, after an 11-day trial, a jury returned a guilty verdict against Lagona on 26 counts of mail fraud and aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 2, 1341; and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349. (See United States v. Lagona, 10-CR-90S, Docket Nos. 76, 81.) Second, on December 18, 2012, Lagona pleaded guilty to attempted obstruction of the due administration of justice, in violation of 18 U.S.C. § 1503 (a). (Docket Nos. 11, 12.[1])

This decision concerns the obstruction case. Presently before this Court is Lagona's pro se[2] Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255. (Docket No. 31.) For the reasons discussed below, Lagona's motion is denied.

## II. BACKGROUND

On December 18, 2012, Lagona appeared before this Court and pleaded guilty to

---

[1] Unless otherwise noted, all docket citations are to the instant criminal case: 12-CR-375S.

[2] Because Lagona is an attorney, he is not entitled to the special solicitude ordinarily afforded a pro se litigant. See Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 82 n. 4 (2d Cir. 2001)).

1

a single count Information charging a violation of 18 U.S.C. § 1503 (a) (obstructing the due administration of justice). (See Docket Nos. 10-12.) Lagona pleaded guilty with the benefit of a plea agreement, in which he agreed that his maximum possible sentence by statute was a term of imprisonment of 10 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of three years. (Plea Agreement, Docket No. 1, ¶ 3.) Lagona further agreed that his Sentencing Guidelines calculations would be dependent on the findings in the fraud case (10-CR-90S), for which he was awaiting sentencing. (Plea Agreement, ¶ 9.) Lagona reserved his right to request a sentence outside of the Sentencing Guidelines range, acknowledged his right to appeal and to collaterally attack his guilty plea and sentencing, and entered the following waiver:

> Knowing [his right to challenge his guilty plea and sentence on direct appeal and collateral review], and in consideration of the concessions made by the United States in this Agreement, the defendant knowingly and voluntarily waives his right to appeal or collaterally challenge: (a) the defendant's guilty plea and any other aspect of the defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and (b) the defendant's sentence or the manner in which his sentence was determined pursuant to 18 U.S.C. § 3742, except to the extent that the court sentences the defendant to a period of imprisonment longer than the statutory maximum, or the court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. § 5K.2 or based on a consideration of the sentence factors set forth in 18 U.S.C. § 3553 (a).

(Plea Agreement, ¶ 13.)

Lagona further acknowledged and agreed that he had discussed his appeal waiver with his attorney and that he would join in a request that this Court find that his appeal waiver was knowing and voluntary. (Plea Agreement, ¶ 14.)

After Lagona entered his plea, this case was joined with the fraud case (10-CR-

90S) for sentencing. On March 20, 2013, this Court sentenced Lagona to 9 years' imprisonment on the mail fraud counts (to run concurrent), 1 year of imprisonment on the conspiracy count (to run consecutive), and 1 additional year of imprisonment (to run consecutive) on the obstruction case. (Docket No. 16.) The one additional year of imprisonment imposed for the obstruction case was not an upward departure and did not exceed the statutory maximum sentence, as referenced in the waiver. (See Plea Agreement, ¶ 13.)

Lagona subsequently filed a Notice of Appeal on March 29, 2013. (Docket No. 20.) On October 24, 2014, the United States Court of Appeals for the Second Circuit, denied Lagona's appeal in a consolidated summary order. See Gane v. United States, 592 Fed.App'x 4 (2d Cir. 2014). The United States Supreme Court later denied Lagona's petition for writ of certiorari on June 8, 2015. See Lagona v. United States, 135 S. Ct. 2828, 192 L. Ed. 2d 864 (2015).

After filing his appeal, Lagona moved to withdraw his guilty plea on February 25, 2014 (Docket No. 40), which this Court denied. See United States v. Lagona, 10-CR-90S (3), 12-CR-375S, 2018 WL 2184516, at *2 (W.D.N.Y. May 11, 2018).

Finally, Lagona filed the instant Motion to Vacate, Set Aside, or Correct his Sentence on May 27, 2016. (Docket No. 31.) After full briefing, this Court took the motion under advisement without oral argument.

### III. DISCUSSION

**A.    § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences. That section provides, in pertinent part, that:

3

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal. See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)). Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)). This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur. See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review. See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). First, the "mandate rule" bars re-litigation of issues already decided on direct appeal. See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez,

4

129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.") This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)). This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate. See id. at 53-54 (citations omitted). An exception to this rule exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence. See Bousley, 523 U.S. at 622-23 (citations omitted); see also Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.") This rule does not apply to ineffective-assistance-of-

5

counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal. See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Leave of court is required to engage in discovery, which may be granted for good cause. See Rule 6 (a). Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[3] Id. The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]." Rule 8 (a). If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A. See Rule 8 (c). A hearing is generally warranted only where the petitioner establishes a plausible claim. See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records

---

[3] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 6 (a).

6

> of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims). However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

Finally, waiver principles also apply. It is by now well established that a knowing and voluntary waiver made as part of a plea agreement is presumptively and generally enforceable. See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). "An enforceable waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005). Thus, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). Waivers, however, are strictly construed against the government due to its greater bargaining power and because it usually drafts the plea agreement. See Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

7

There are, however, narrow exceptions to the general enforceability of waivers, including:

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)).

To determine whether a waiver is enforceable, courts examine the underlying record and may rely on a defendant's sworn statements during the plea allocution, see Salerno v. Berbary, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005), which statements "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony," United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001). But even "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which a waiver has been procured," such as a plea agreement. Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002). A waiver may thus be unenforceable if the petitioner has a meritorious claim that it was procured as the result of ineffective assistance of counsel. See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004). Ineffective-assistance-of-counsel claims involving post-plea events, however, do not survive the waiver. See United States v. Laskaris, No. 11-CR-364, 16-CV-7207, 2018 WL 4863591, at *2 (E.D.N.Y. Sept. 28, 2018) (collecting cases).

Relatedly, the valid entry of a guilty plea "conclusively resolves the question of

factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006); see Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (noting that if a defendant validly admits guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").

Ultimately, the petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.     Lagona's Claim**

Lagona filed the same § 2255 motion in both this case and the fraud case (10-CR-90S). But for a single claim addressed below, the combined motion asserts claims relating entirely to the fraud case, which claims this Court denied in a separate decision. See Lagona v. United States, 16-CV-427S, 10-CR-90S (3), 2018 WL 3159535 (W.D.N.Y. June 28, 2018).

The only claim that pertains to this case concerns Lagona's allegation that his lawyer provided ineffective assistance of counsel by failing to have him examined by a mental health professional before sentencing. (Docket No. 31, ¶¶ 41-42.) Lagona claims that he wanted to meet with and be examined by a mental health professional "because of loss of recollection of periods of time and other symptoms that [he] had and was experiencing." (Docket No. 31, ¶ 41.) Lagona maintains that his lawyer scheduled this examination, but then canceled it after determining that it was unnecessary. (Id.) After

9

sentencing, while he was incarcerated, a mental health professional allegedly diagnosed Lagona with anxiety, depression, and post-traumatic stress disorder. (Id. at 42.) Given this alleged finding, Lagona claims that his lawyer was ineffective and should have had him examined by a mental health professional so that this Court could have considered the results of the examination before imposing sentence.[4] (Id.)

This claim is barred by Lagona's waiver, which was knowingly and voluntarily entered. In addition to the presence of the waiver provision in the plea agreement (Docket No. 11), Lagona indicated his understanding of the waiver during the plea allocution:

> Court: But the fact of the matter is in the plea agreement you've given up your right to take an appeal if the sentencing – if there is not an appeal taken by the government. If the government chooses to take an appeal, then your giving up your right to appeal is null and void and you may proceed on the appeal basis after sentencing, do you understand?
>
> Lagona: I do, your Honor.
>
> Court: Essentially that's the agreement, Mr. Cooney [prosecutor]?
>
> Cooney: That's correct, your Honor.
>
> Court: Mr. DeMatteo [defense counsel]?
>
> DeMatteo: Yes, your Honor.
>
> Court: Okay. For practical purposes, we're probably saying at this point that you do not have a right to appeal the outcome of this plea and sentence in this case. Do you understand?

---

[4] This is not the first time Lagona has sought relief based on this alleged post-sentencing mental-health diagnosis. His previous motion to withdraw his guilty plea in this case and to secure a new trial in the fraud case were premised on his contention that a counselor at the Buffalo Federal Detention Facility diagnosed him with mental-health conditions allegedly traced to his wife's troubled pregnancy and the premature birth of his daughter 27 years prior, as well as to the stress of caring for his disabled wife and handicapped daughter. See United States v. Lagona, 2018 WL 2184516, at *1-4. This Court denied both motions. See id. at *5.

> Lagona: I understand, your Honor.

(Plea Transcript, Docket No. 26, pp. 7-8.)

> Court: Okay. So I take it that what you're telling me is – and as you know, after a trial you have the right to appeal if there's an adverse verdict, and you exercised that right to appeal following your other trial.
>
> Here you've given up your right to appeal according to the terms of paragraph 13, which is on page 9. And that waiver of appeal in that section that extends through 15 is rendered moot in the event that the government takes an appeal after I sentence and they don't like what I do, or if they think I've committed some sort of error. Do you understand?
>
> Lagona: I do, your Honor.

(Plea Transcript, p. 26.)

Lagona also indicated his mental fitness to enter the plea and his satisfaction with his lawyer:

> Court: Okay. Just for purposes of the record, Mr. Lagona, any difficulty understanding me or your lawyer or the documents in this case?
>
> Lagona: No difficulties, your Honor.
>
> Court: Whatever questions or issues you had concerning the contents of the document, have they been addressed to your satisfaction such that you're comfortable proceeding forward?
>
> Lagona: Yes, your Honor.

(Plea Transcript, pp. 9-10.)

> Court: . . . You've gone over each and every page [of the plea documents] and any time you had a question, you've received advice or an answer from your lawyer in connection with that?

| | | |
|---|---|---|
| | Lagona: | That's correct, your Honor. |

(Plea Transcript, p. 11.)

Finally, Lagona indicated that he was entering his guilty plea knowingly and voluntarily:

| | | |
|---|---|---|
| | Court: | Okay. From your standpoint, does this constitute the full agreement? |
| | Lagona: | It does, your Honor. |
| | Court: | Okay. Any other promises made to you that you are relying upon that are not contained in this written agreement which you have executed? |
| | Lagona: | None, your Honor. |
| | Court: | Anybody force you or threaten you to sign it? |
| | Lagona: | No, your Honor. |
| | Court: | Mr. DeMatteo, Mr. Lagona has signed on your advice. I take it you've advised him and you've signed as well? |
| | DeMatteo: | I have. |
| | Court: | Okay. Mr. Cooney, again, you've signed with the authority of the Department of Justice? |
| | Cooney: | I have, your Honor. |
| | Court: | Okay. Any reason, Mr. Lagona, why I should not accept this plea agreement and make it binding for purposes of this proceeding? |
| | Lagona: | I have no reasons, your Honor. |

(Plea Transcript, pp. 30-31.)

| | | |
|---|---|---|
| | Court: | All right. All right, Mr. Lagona, I'm convinced after observing you and going through this allocution and getting your confirmation of your |

> various understandings as we have discussed them, that your plea of guilty is knowing. You understand the terms, conditions and possible consequences, right?
>
> Lagona: Correct, your Honor.
>
> Court: All right. Is it a fair statement to say that everything you have done here today in connection with all of these agreements and your waiver of rights and the related details leading to your plea of guilty, that that's all been done voluntarily, is that a fair statement?
>
> Lagona: Yes, your Honor.

(Plea Transcript, pp. 32-33.)

It is clear from this allocution that Lagona entered his plea knowingly and voluntarily, and he does not now argue otherwise. The waiver provisions of the plea are therefore fully enforceable. And while a waiver provision does not foreclose all ineffective-assistance-of-counsel claims, it forecloses this one.

Ineffective-assistance-of-counsel claims are not necessarily barred by enforceable waivers because "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured," such as a plea agreement. Frederick, 308 F.3d at 195; see El Saleh v. United States, 13-CV-1567 (DLI), 2016 WL 4734601, at *3 (E.D.N.Y. Sept. 9, 2016) ("[A] defendant cannot be bound by an appeal waiver if the decision to enter a plea agreement was the product of counsel's ineffective assistance") (citing Hernandez, 242 F.3d at 114)). Thus, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver *only* where the claim concerns the advice the defendant received from counsel." Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (emphasis added). This is because, if a petitioner

13

challenges counsel's effectiveness in connection with the plea agreement itself, he is in essence challenging the constitutionality of the process by which he waived his right to collaterally attack the sentence, and his claim therefore survives the waiver. Id. ("although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does."); see also El Saleh, 2016 WL 4734601, at *3 ("[W]here an attorney's ineffective assistance caused a defendant to agree to a waiver, a court must look past the waiver and examine the underlying merits of the ineffective assistance claim."). In short, ineffective-assistance-of-counsel claims that affect the plea process survive the waiver, and those that do not, do not. See id. at *5.

Here, Lagona's ineffective-assistance-of-counsel claim does not survive the plea waiver because it does not involve the plea process. Rather, Lagona's claim involves ineffectiveness at sentencing. Accordingly, because Lagona's claim does not challenge the constitutionality of the process by which he waived his collateral attack and appeal rights, this Court finds that it is barred by the waiver provisions of his plea agreement. Parisi, 529 F.3d at 138-39; see also United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("[D]efendant claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing. We emphatically reject this contention."); United States v. Jimenez, 106 F. App'x 92, 93 (2d Cir. 2004) (citing Monzon, 359 F.3d at 118 ("[A] claim of ineffective assistance is waived when . . . it attacks the sentence itself and not the underlying plea agreement that supported the sentence.")).

14

**C. Evidentiary Hearing**

In his motion, Lagona requests the opportunity to advance his claim at an evidentiary hearing. As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, no evidentiary hearing is required because Lagona's motion and the record conclusively demonstrate that Lagona is entitled to no relief under § 2255. Consequently, this Court finds that no hearing is warranted or required. See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

**D. Certificate of Appealability**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To make the required "substantial showing," Lagona must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted). Lagona has made no such substantial showing of the denial of a constitutional right in this case. A certificate of appealability will therefore not be issued.

## IV. CONCLUSION

Having considered Lagona's § 2255 motion, this Court finds that his claim is barred by the waiver provisions of his guilty plea, which was entered knowingly and voluntarily. If Lagona wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action. Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit, in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 31) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 16-CV-428S.

SO ORDERED.

Dated:    October 15, 2018
            Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                          United States District Judge